KENNETH S. HIXSON, Judge
Ashley Wagner appeals after the Sebastian County Circuit Court filed an order terminating her parental rights to H.W. (DOB 3-17-2017).[1] Appellant's attorney has filed a no-merit brief and a motion to withdraw as counsel pursuant to Arkansas Supreme Court Rule 6-9(i) (2017) and Linker-Flores v. Arkansas Department of Human Services , 359 Ark. 131, 194 S.W.3d 739 (2004). The clerk of this court mailed a certified copy of counsel's motion and brief to appellant's last known address informing her of her right to file pro se points for reversal; however, she has not done so. We grant counsel's motion to withdraw and affirm the order of termination.
I. Facts
On April 25, 2017, Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect of H.W., who was a little over a month old at the time. In the affidavit attached to the petition, DHS explained that the child had been removed after DHS was asked to assist with H.W.; appellant had been arrested and charged with maintaining a premises for drug activity, *480 child endangerment, and possession of drugs and drug paraphernalia. The trial court granted the petition, finding that probable cause existed for the removal. The trial court found that there was probable cause to believe that the child was dependent-neglected and that it was contrary to the child's welfare to remain with appellant. It noted that appellant had been released from prison on March 8, 2017; had given birth to H.W. on March 17, 2017; and had been arrested on April 22, 2017, following a "drug bust" at the home she shared with her child. The trial court further noted that appellant had her parental rights involuntarily terminated to an older child on September 15, 2016, as a result of a case that opened because of newborn illegal-substance exposure. Subsequently, the trial court filed a probable-cause order.
An adjudication hearing was held on June 7, 2017, and the trial court found that the child was dependent-neglected on the bases of parental unfitness, substance abuse, and threat of harm as defined in the Arkansas Juvenile Code. The goal of the case was reunification. Appellant was granted visitation at DHS's discretion and ordered to obtain and maintain stable and appropriate housing, employment, income, and transportation; complete parenting classes; undergo a psychological evaluation and complete any treatment recommended; stay clean and sober; submit to a drug-and-alcohol assessment and complete any treatment recommended; submit to random drug screens, hair follicle tests, and alcohol swabs at the request of DHS; and comply with her case plan, the terms of her parole, and any sentences imposed.
A review hearing was held on October 18, 2017, and the trial court subsequently filed a review order and order of paternity. In its order, the trial court noted that appellant had not complied with the case plan. Appellant had exercised only two visits with her child, and she left early on both occasions when she was asked to submit to a drug test. Appellant failed to show up for five other scheduled visits even though DHS had confirmed beforehand that appellant would attend. The trial court announced that the concurrent goals of the case were reunification and adoption.
On October 18, 2017, DHS and the attorney ad litem filed a joint petition for termination of parental rights. With respect to appellant, several grounds for termination under Arkansas Code Annotated section 9-27-341(b)(3)(B) (Supp. 2017) were alleged, including involuntary termination of parental rights to another child, little likelihood, abandonment, and subsequent factors.
At the January 10, 2018 termination hearing, appellant testified that she had resolved all her pending criminal cases and that she had either pleaded guilty or been adjudicated. She testified that she had not been incarcerated throughout the entirety of the case; rather, she had been incarcerated since November 2017. Appellant further anticipated that she would be released in June 2018. Appellant testified that she was still in a relationship with H.W.'s father and that they had lived together before her incarceration. Appellant explained that although she has five children, she did not have custody of any of them. Appellant testified that she does not consider herself a drug addict, but she admitted that she used drugs in April and November 2017 before her arrest. Appellant additionally admitted that she had not had stable employment before her arrest and that she had not attempted to communicate with anyone about finding employment once she is released. She requested that she be given a year to prove that she could take care of herself and H.W.
*481 Mindy Tuck-Duty, the DHS caseworker assigned to the case, testified regarding the case history as previously stated. She testified that appellant had completed only four visits in the last eight or nine months. Appellant left early during her last visit with H.W. after Tuck-Duty asked her to complete a drug screen. Tuck-Duty testified that she was also the caseworker assigned to appellant's previous dependency-neglect case in which appellant's parental rights to another child were involuntarily terminated. Tuck-Duty testified that appellant had similar compliance issues in that case. She testified that H.W. does not have any medical or developmental delays that would keep him from being adoptable and that there was someone currently interested in adopting him. Therefore, she opined that it was in the child's best interest to terminate appellant's parental rights.
In the termination order, the trial court found by clear and convincing evidence that it was in the child's best interest to terminate appellant's parental rights. The trial court made the following pertinent findings:
3. The following items were introduced into evidence: proof of service on the mother and father, a certified copy of the Ex Parte order, a copy of the case plan, a certified copy of the Adjudication order, referral for a drug and alcohol assessment, a packet of referrals for the father, an email regarding a hair follicle not attended by the father, a certified sentencing order for Ashley Keel (aka Ashley Wagner) CR 2014-9-B-G, a certified sentencing order for Ashley Wagner CR 2016-28, a certified sentencing order for Ashley Wagner CR 2016-107B, a certified sentencing order for Randy Yancey CR 2016-107-A-G, a certified sentencing order for Ashley Wagner CR 2017-104B, a pending affidavit arrest warrant for Randy Yancey, a preliminary hearing order from Laflore County, OK regarding Randy Yancey CF-17-175, an affidavit of child support arrears on both parents, a warrant on Randy Yancey in the Sebastian County Warrant Search, an Oklahoma Journal Entry terminating Ashley Keel's (aka Ashley Wagner) rights to three children, a certified copy of an amended Emergency Petition in case number JV 2015-485, a certified copy of the Adjudication order in case number JV 2015-485, and a certified copy of the Order Terminating Parental Rights in JV 2015-485.
4. The Court has considered and reviewed all the evidence submitted and the testimony of the witnesses in this matter, and finds that the Department of Human Services has proven by clear and convincing evidence that:
a. The mother was candid with the court but showed a lack of judgment.
b. The mother has two prior involuntary terminations.
c. The mother has abandoned the juvenile. She made only 4 visits during the case.
d. There is little likelihood that additional time or services will result in reunification. None of the original issues have been resolved. The mother was referred for services in May of 2017. Those services included a drug and alcohol assessment and a hair follicle. The services were offered to no avail.
e. [H.W.] has not been in the mother's care since he was one month old.
f. There have been subsequent issues after the removal. The mother had several outstanding criminal charges. She failed to resolve some charges which were incurred prior to the beginning of the case. The mother was sentenced to prison as part of the *482 resolution of her outstanding criminal charges.
g. The Court finds that the Arkansas Department of Human Services made reasonable efforts throughout the case.
h. The Court finds that the juvenile would be at risk of harm, both physically and psychologically if returned to a parent, as evidenced by the facts set forth above.
i. The Court finds that it is in the best interest of the juvenile to terminate parental rights. In making this finding, the Court specifically considered the likelihood that the juvenile will be adopted if the termination petition is granted. The Court finds the juvenile to be adoptable and healthy. There is a family currently interested in adopting [H.W.] should he be free for adoption.
5. As such, the Court grants the joint termination petition of the Department of Human Services and the Attorney Ad Litem and herby terminates all parental rights between Ashley Wagner and her child, [H.W.]
....
11. There shall be concurrent goals of termination and adoption and reunification as it pertains to the father's portion of the case.
This appeal followed.
II. Standard of Review
A trial court's order terminating parental rights must be based on findings proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3). Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. Posey v. Ark. Dep't of Health & Human Servs. , 370 Ark. 500, 262 S.W.3d 159 (2007). On appeal, the appellate court reviews termination-of-parental-rights cases de novo but will not reverse the trial court's ruling unless its findings are clearly erroneous. Id. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. Id. In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the trial court to judge the credibility of witnesses. Id.
In order to terminate parental rights, a trial court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii). The order terminating parental rights must also be based on a showing of clear and convincing evidence as to one or more of the grounds for termination listed in section 9-27-341(b)(3)(B). However, only one ground must be proved to support termination. Reid v. Ark. Dep't of Human Servs. , 2011 Ark. 187, 380 S.W.3d 918.
The intent behind the termination-of-parental-rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3). Even full compliance with the case plan is not determinative; the issue is whether the parent *483 has become a stable, safe parent able to care for his or her child. Cobb v. Ark. Dep't of Human Servs. , 2017 Ark. App. 85, 512 S.W.3d 694. Moreover, a child's need for permanency and stability may override a parent's request for additional time to improve the parent's circumstances. Id. Finally, a parent's past behavior is often a good indicator of future behavior. Id.
III. Termination
In dependency-neglect cases, if, after studying the record and researching the law, appellant's counsel determines that the appellant has no meritorious basis for appeal, then counsel may file a no-merit petition and move to withdraw. Ark. Sup. Ct. R. 6-9(i)(1) (2017). The petition must include an argument section that lists all adverse rulings that the parent received at the trial court level and explain why each adverse ruling is not a meritorious ground for reversal. Ark. Sup. Ct. R. 6-9(i)(1)(A). The petition must also include an abstract and addendum containing all rulings adverse to the appealing parent that were made during the hearing from which the order on appeal arose. Ark. Sup. Ct. R. 6-9(i)(1)(B).
In counsel's no-merit brief, counsel correctly asserts that there can be no meritorious challenge to the sufficiency of the evidence supporting the termination of appellant's parental rights. Although the trial court found four statutory grounds for termination, only one ground is necessary to support the termination. See Campbell v. Ark. Dep't of Human Servs. , 2017 Ark. App. 82, 2017 WL 519132. Before the initiation of these proceedings, appellant had her parental rights involuntarily terminated to at least one of H.W.'s older siblings. Two prior termination orders were entered into evidence at the termination hearing, demonstrating that appellant's parental rights had been terminated to four of H.W.'s older siblings. The first termination order was from Oklahoma and involved three of appellant's children. There was some disagreement at the termination hearing as to whether the termination order from the Oklahoma court was an involuntary termination because the order never used the word "involuntary." Nevertheless, the second termination order was from Sebastian County, Arkansas, and clearly involuntarily terminated appellant's parental rights to a fourth child in 2016. One of the statutory grounds found by the trial court in the instant case was that, under Arkansas Code Annotated section 9-27-341(b)(3)(B)(ix)(a)(4) , appellant had her parental rights involuntarily terminated as to another child. This ground supported termination of appellant's parental rights to H.W., and any argument to the contrary would be without merit.
Appellant's counsel further asserts that there can be no meritorious challenge to the trial court's finding that termination was in H.W.'s best interest, and we agree. The testimony showed that appellant had failed to comply with the case plan, had failed to visit the child regularly, and was incarcerated at the time of the hearing. Moreover, the caseworker testified that H.W. is adoptable and that someone was already interested in adopting him. On this record, the trial court's finding that termination of appellant's parental rights was in H.W.'s best interest was not clearly erroneous.
IV. Other Adverse Rulings
Finally, appellant's counsel addresses several evidentiary rulings that were adverse to appellant. Evidentiary rulings by a trial court are reviewed for abuse of discretion. Cheney v. Ark. Dep't of Human Servs. , 2012 Ark. App. 209, 396 S.W.3d 272. Furthermore, a mere showing that the trial court erroneously admitted evidence *484 will not support a reversal, absent a showing of prejudice. Hooks v. Ark. Dep't of Human Servs. , 2017 Ark. App. 687, 536 S.W.3d 666.
At the termination hearing, appellant objected on relevancy grounds to the admission of (1) three of appellant's prior sentencing orders involving drug offenses, (2) appellant's testimony regarding her communication with H.W.'s father, and (3) the caseworker's testimony regarding services that were offered to appellant during her prior Arkansas dependency-neglect case. Additionally, appellant objected to the admission of several of the documents relating to appellant's previous Oklahoma and Arkansas dependency-neglect cases, claiming that the evidence was more prejudicial than probative. We agree with counsel that there is no arguable merit to an appeal from these adverse rulings based on our standard of review.
Thus, after carefully examining the record and the brief presented to us, we find that counsel has complied with the requirements established by the Arkansas Supreme Court for no-merit appeals in termination cases, and we conclude that the appeal is wholly without merit. Accordingly, we affirm the order terminating appellant's parental rights and grant counsel's motion to withdraw.
Affirmed; motion to withdraw granted.
Klappenbach and Whiteaker, JJ., agree.

Randy Yancey is H.W.'s father. Because the trial court terminated only Wagner's parental rights in the April 18, 2018 order, he is not a party to this appeal.