Cite as 2025 Ark. App. 16

# ARKANSAS COURT OF APPEALS
## DIVISION III
No. CV-24-218

| | | |
|---|---|---|
| MICHAEL ATTEBERY | | Opinion Delivered January 15, 2025 |
| | APPELLANT | APPEAL FROM THE FRANKLIN COUNTY CIRCUIT COURT, NORTHERN DISTRICT [NO. 24OJV-22-20] |
| V. | | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD | | HONORABLE KEN D. COKER, JR., JUDGE |
| | APPELLEES | AFFIRMED; MOTION TO WITHDRAW GRANTED |

**WENDY SCHOLTENS WOOD, Judge**

Counsel for Michael Attebery brings this no-merit appeal from the Franklin County Circuit Court's order entered on January 8, 2024, terminating his parental rights to his minor child (MC) (03/17/22).[1] Pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(j) (2024), his counsel has filed a no-merit brief setting forth all adverse rulings from the termination hearing and asserting that there are no issues that would support a meritorious appeal. The sole adverse ruling was the termination. Counsel has also filed a motion asking

---

[1] We previously affirmed the termination of the parental rights of the mother, Savanah Milholland. *Milholland v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 567, 680 S.W.3d 718. We will not discuss the case plan or services in relation to Milholland in this opinion unless they pertain to Attebery's case plan and compliance or noncompliance.

to be relieved. The clerk of this court sent a copy of the brief and motion to be relieved to Attebery, informing him that he has the right to file pro se points for reversal under Arkansas Supreme Court Rule 6-9(j)(3). He has filed no points. We grant counsel's motion to withdraw and affirm the order terminating Attebery's parental rights.

MC tested positive for methamphetamine, amphetamines, opiates, and marijuana at his birth, which prompted the Arkansas Department of Human Services (DHS) to open a protective-services case involving MC and his parents in March 2022. Attebery was in a relationship with Milholland at the time of MC's birth, and he was listed as MC's father on the birth certificate. Milholland was arrested on August 15, 2022, and tested positive for methamphetamine and K2 at the detention center. DHS exercised emergency custody over MC and, on August 17, filed a petition for emergency custody and dependency-neglect. Attebery was incarcerated at the time of MC's removal.

The court granted the petition, finding that probable cause existed, and entered a probable-cause order on September 6. In an order entered on November 11, MC was adjudicated dependent-neglected due to parental unfitness based on stipulation of the parties and proof that Milholland's "substance misuse and instability create a risk of harm to the juvenile." The court also found that Attebery[2] was a noncustodial legal parent of MC, did not contribute to MC's dependency-neglect because he was incarcerated at the time of

---

[2]Although Attebery was listed on MC's birth certificate and he and Milholland executed an acknowledgement of paternity regarding MC, DNA testing confirmed that he is not MC's biological parent.

removal, and was not a fit parent for purposes of custody. The court set a goal of reunification and awarded supervised visitation to the parents. The court ordered the parents to comply with the case plan and court orders; cooperate with DHS and service providers; obtain and maintain stable and appropriate housing, transportation, employment, and income; visit MC regularly and appropriately; remain clean and sober; and notify DHS of any significant changes in their lives, employment, health, sobriety, housing, or transportation.

The case proceeded to a termination hearing on April 12, 2023. Attebery testified that he had a home, was employed as a handyman, owned a car, was working on getting a valid driver's license, and had participated in parenting classes. He admitted that he had several prior drug-related convictions but stated that he had a bond with MC, attended regular visitations, and did not want his rights terminated. The DHS caseworker, Leslie Case, testified that Attebery had engaged in some services, though his attendance at counseling had been sporadic, and that he had tested both positive and negative on drug screens throughout the case. She did not believe it was safe for MC to live with Attebery because he still struggled with substance abuse and was not sufficiently stable.

On April 28, the court entered an order terminating Milholland's parental rights but not Attebery's. The court found that DHS had not proved by clear and convincing evidence that MC's welfare was best served by termination of Attebery's rights, noting that he had regularly visited MC; there appeared to be a connection between them; and that, while he had continued to use drugs, he had never been offered substance-abuse services even though

3

the goal of the case was reunification. The court ordered him to enter and successfully complete residential drug treatment.

After a July 2023 permanency-planning hearing, the court changed the goal to adoption, and DHS and the attorney ad litem filed a joint petition to terminate Attebery's parental rights to MC. A termination hearing was held on November 29.

At the hearing, DHS family-service worker Ashley Dossett testified that Attebery's parental rights to another child had been involuntarily terminated in 2004, and DHS introduced the termination order into evidence. She also testified that, of the thirty-one drug screens DHS had collected on Attebery, half were altered or had no temperature, seven were negative, four were positive, and four were refused. She said that on September 1, less than three months before the hearing, Attebery admitted he had previously used other people's urine or "fake urine" for a drug screen, and he said today "you're finally going to get my actual pee." Attebery tested positive for methamphetamine, amphetamines, and THC that day. He tested positive for drugs again on October 20. Dossett said that Attebery attended and completed a two-week drug-treatment program in November, finishing six days before the termination hearing. She opined that Attebery had not demonstrated an ability to appropriately parent, and she testified that MC is adoptable.

DHS caseworker Leslie Case testified that she agreed with everything Dossett had said in her testimony. She also said that she had prepared a court report for the hearing, which was introduced into evidence. In it, Case reported that Attebery had entered a drug-treatment facility on May 25, which he left on May 28. DHS workers then made multiple

4

attempts to collect random drug screens at his home, but they were always told that he was not at home. The report stated that although Attebery was continuing to exercise weekly visitation with MC, the visits had been modified from one 4-hour visit to two 2-hour visits because Attebery was falling asleep during the visits. This continued to occur even during the 2-hour visits. The report requested termination of Attebery's parental rights.

Attebery testified that he owns a home in which he lives with his girlfriend and her eight-year-old son. He said that his girlfriend "might have a violent charge" for "hit[ting] a cop" and that she does not work. He said that he earns $800 a month helping cancer patients with yard work. He said he had been going to counseling once a week for about a year. He also testified that he stayed in a drug-treatment facility for two weeks in November and was released a week before the termination hearing. He admitted testing positive for illegal substances in September, October, and November but said that he had been sober for a week and had done "everything" DHS had asked him to do.

The court entered an order terminating Attebery's parental rights on January 8, 2024, on the grounds of twelve-months failure to remedy; aggravated circumstances—little likelihood of successful reunification; not the biological father; and involuntary termination to another child. *See* Ark. Code Ann. § 9-27-341(b)(3)(B)(i), (iii), (ix)*(a)(3)* & *(4)* (Supp. 2023). The court also found termination was in the child's best interest, specifically considering adoptability and potential harm.

Attebery's attorney correctly states that the only adverse ruling is the circuit court's termination decision. This court reviews termination-of-parental-rights cases de novo. *Lloyd*

*v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 461, at 7, 655 S.W.3d 534, 540. Termination requires a finding of at least one statutory ground and a finding that termination is in the child's best interest. *Id.* at 8, 655 S.W.3d at 540. Arkansas Code Annotated section 9-27-341(b)(3) requires a circuit court's order terminating parental rights to be based on clear and convincing evidence. *Id.* at 8, 655 S.W.3d at 540. Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Baker v. Ark. Dep't of Hum. Servs.*, 340 Ark. 42, 48, 8 S.W.3d 499, 503 (2000). When the burden of proving a disputed fact is by clear and convincing evidence, the question that must be answered on appeal is whether the circuit court's finding was clearly erroneous. *Payne v. Ark. Dep't of Hum. Servs.*, 2013 Ark. 284, at 3. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* This court gives a high level of deference to the circuit court because the circuit court is in a superior position to observe the parties before it and to judge the credibility of the witnesses and the weight of the evidence. *Id.*

Attebery's counsel argues that there is no merit to an appeal of the circuit court's finding of grounds. Counsel addresses two of the four grounds found by the court. Counsel first states that DHS demonstrated that Attebery was not MC's biological father through a

DNA test.[3] Attebery did not dispute this fact. Counsel additionally states that MC's welfare is best served by terminating parental rights because Attebery continued to use drugs throughout the entirety of the case and failed to address his drug problem or comply with the court's orders until the month of the termination hearing. We have consistently recognized that a failure to comply with the case plan and court orders is sufficient evidence to demonstrate a risk of harm and a parent's incapacity or indifference. *Gonzalez v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 425, at 9, 555 S.W.3d 915, 920. While Attebery made an effort to rehabilitate himself the month of the termination hearing, his eleventh-hour improvement need not be credited by the circuit court and will not be held to outweigh evidence of prior noncompliance. *Arnold v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 300, at 10, 578 S.W.3d 329, 335–36.

Although only one ground is necessary, counsel further notes that evidence of the termination of Attebery's parental rights to another child was introduced. This is sufficient grounds to terminate Attebery's parental rights as well. *See* Ark. Code Ann. § 9-27-341(b)(3)(B)(*ix*)(*a*)(4)(A); *Wagner v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 554, at 8–9, 566 S.W.3d 478, 483.

Attebery's counsel also argues that there is no merit to an appeal of the circuit court's best-interest finding. When making the best-interest finding, a circuit court is required to

---

[3]This ground, set forth in Arkansas Code Annotated section 9-27-341(b)(3)(B)(iii)(*a*), will support termination when the parent is not the biological parent of the juvenile and the welfare of the juvenile can best be served by terminating the parental rights of the parent.

consider the likelihood of adoptability and the potential harm to the health and safety of the child that would be caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A). Potential harm is viewed in broad terms and in a forward-looking manner. *Myers v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 46, at 17, 660 S.W.3d 357, 369. In determining potential harm, the circuit court may consider past behavior as a predictor of the potential for harm if the child is returned to the parent. *Furnish v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 511, at 14, 529 S.W.3d 684, 692.

Attebery's counsel points out that Dossett testified that MC is adoptable, that MC had remained in the same foster home for over a year, and that there were no barriers to adoption. This is sufficient to support a circuit court's consideration of adoptability in its best-interest finding. *Cole v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 121, at 6–7, 543 S.W.3d 540, 544. Counsel also asserts that Attebery's long-term drug use created enough potential harm to affirm the court's best-interest finding. A parent's past behavior is often a good indicator of future behavior. *Schaible v. Ark. Dep't of Hum. Servs.*, 2014 Ark. App. 541, at 8, 444 S.W.3d 366, 371.

From our review of the entire record and the brief presented by Attebery's counsel, we have determined that counsel has complied with the requirements for no-merit appeals in termination cases, and we hold that the appeal is wholly without merit. Accordingly, we affirm the termination order and grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.

ABRAMSON and GLADWIN, JJ., agree.

8

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for appellant.

One brief only.