
# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-16-425

| | |
|---|---|
| | **Opinion Delivered** September 28, 2016 |
| MIA DADE<br>APPELLANT | APPEAL FROM THE UNION COUNTY CIRCUIT COURT [NO. 70JV-15-10] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br>APPELLEES | HONORABLE EDWIN KEATON, JUDGE<br><br>AFFIRMED |

## LARRY D. VAUGHT, Judge

Mia Dade appeals the February 26, 2016 order of the Union County Circuit Court terminating her parental rights to her son, R.M. (born January 28, 2013). Her son was taken into emergency custody by the Arkansas Department of Human Services (DHS) in January 2015. DHS filed a petition to terminate Dade's parental rights in September 2015, which was granted in February 2016. On appeal, Dade argues that the decision to terminate her parental rights was clearly erroneous because there is insufficient evidence of the ground to support the decision. She also argues that it was error for the trial court to permit her to proceed without an attorney. We affirm.

We review termination-of-parental-rights cases de novo. *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 213, 40 S.W.3d 286, 291 (2001). At least one statutory ground must exist, in addition to a finding that it is in the child's best interest to terminate parental rights;[1] these

---

[1] Dade does not challenge the trial court's best-interest finding.

SLIP OPINION

must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3) (Repl. 2015). Clear and convincing evidence is that degree of proof that will produce in the fact finder a firm conviction as to the allegation sought to be established. *Anderson v. Douglas*, 310 Ark. 633, 637, 839 S.W.2d 196, 198 (1992).

The standard of review in appeals of termination-of-parental-rights cases is de novo, but we reverse a trial court's decision to terminate parental rights only when it is clearly erroneous. *Ullom v. Ark. Dep't of Human Servs.*, 340 Ark. 615, 621, 12 S.W.3d 204, 208 (2000). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a distinct and firm conviction that a mistake was made. *Wade v. Ark. Dep't of Human Servs.*, 337 Ark. 353, 356, 990 S.W.2d 509, 511 (1999). In these cases, we must give due regard to the opportunity of the trial court to judge the credibility of the witnesses. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 248, 947 S.W.2d 761, 763 (1997).

In the instant case, the trial court found that DHS proved by clear and convincing evidence that Dade had subjected R.M. to aggravated circumstances pursuant to Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)(A)*. "Aggravated circumstances" means a determination has been made by a judge that there is little likelihood that services to the family will result in successful reunification. Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)(B)*. Dade, who suffers from a mental disability, challenges this finding, arguing that the evidence demonstrated that she had successfully reunited with R.M. in the past after having received inpatient mental-health treatment and that DHS failed to provide her intensive mental-health services during

this case.[2] Therefore, she argues that the finding that there was little likelihood that services would result in successful reunification was based on speculation. We disagree.

At the December 2015 hearing, DHS caseworker Carolyn Samuel testified that R.M. had been removed from Dade's custody in February 2013[3] and in January 2015 based on her mental instability. Dade had been diagnosed with delusional disorder and paranoid personality disorder. In the instant case, DHS offered visitation; counseling services, which Dade discontinued; medication management, which Dade declined; a psychological evaluation; and home visits. Samuel stated that Dade's behavior was "completely different" now than what it had been in February 2013. Now, Dade spoke "gibberish" at visitation. Other DHS employees reported Dade's more recent erratic behavior. Samuel testified that she recently witnessed Dade in the middle of the street, wearing inappropriate "skimpy" clothing, cursing at a man. When confronted, Dade denied it. Samuel stated that Dade had been arrested for aggravated assault in September 2015. Despite the increased number of incidents of unstable behavior, Samuel testified that Dade continued to deny needing mental-health treatment.

Dade's counselor, Wendy Makus, testified that Dade had not attended counseling since June 2015, and had missed multiple appointments. Makus also testified that it was unknown

---

[2] Included in the body of this point on appeal—in one sentence—Dade also argues, "[t]he absence of any evidence of accommodations under the Americans with Disabilities [A]ct is further proof that it was speculative for the circuit court to terminate Mia's rights without the benefit of accommodations." Dade, however, did not raise or establish below that she was entitled to ADA protection, and the trial court did not rule on that argument. It is, therefore, not preserved for appellate review. *Burnett v. Ark. Dep't. of Human Servs.*, 2011 Ark. App. 596, at 12, 385 S.W.3d 866, 873; *Gilmore v. Ark. Dep't. of Human Servs.*, 2010 Ark. App. 614, at 9, 379 S.W.3d 501, 506.

[3] R.M. was returned to Dade's custody at some point thereafter, and the 2013 case was closed.

whether Dade was taking her medication. Makus added that Dade had been involuntarily committed in January 2015 and June 2015 based on her unstable behavior and that Dade denied the behavior that led to the admissions. The counselor said that she had concerns about Dade's mental stability and her ability to parent and that Dade had little insight into her psychiatric illness.

El Dorado Police Officer Anthony Ross testified about two interactions with Dade. The first was in January 2015 when he was called to her home for a welfare check. He said that her behavior was unstable and erratic, she spoke gibberish and otherwise refused to communicate, paced constantly, charged at DHS representatives, and had to be restrained. This incident led to a hospital admission. Officer Ross's second interaction with Dade occurred in September 2015 at Murphy USA. The officer stated that Dade's behavior was similar to that in January 2015 and that she was later arrested for aggravated assault.

Hospital records reflect that Dade was involuntarily admitted for psychiatric care in June 2015 following an incident at a bank. The report reflects that Dade was found "laughing uncontrollably and grossly disorganized." At the time, she believed that she was Kim Kardashian.

Dade, who remained incarcerated on the aggravated-assault charge, also testified. She denied the street encounter described by Samuel; she denied the January and June 2015 incidents that led to her two hospital admissions; she denied assaulting anyone in September 2015; she denied talking in gibberish; she denied the need for medication and counseling; she said she did not know why DHS had taken custody of her son; and she did not remember why

SLIP OPINION

she received Social Security disability benefits. She stated that her mental stability was "fine" and that the hospital staff where she was involuntarily admitted thought she was stable.

This evidence supports the trial court's aggravated-circumstances finding that there is little likelihood that services to the family will result in successful reunification. DHS provided appropriate reunification services to Dade—including services directed toward improving her mental health. However, the evidence established that Dade is unable or unwilling to recognize that she suffers from mental illness. She denied all incidents of her erratic behavior, refused to take her medications and attend counseling sessions, and refused to accept responsibility for her actions; therefore, she consistently negated the efforts of DHS. R.M. has been in and out of DHS custody since his birth due to Dade's condition; thus, we have before us a record of repeated failures to remedy the problem that required DHS involvement. Given this history of failure, we conclude that the trial court did not err in finding that there was little likelihood that services to Dade will result in successful reunification. Accordingly, we affirm the order terminating her parental rights to R.M.

Dade also argues on appeal that it was error for the trial court to permit her to proceed without an attorney. In the January 2015 ex parte order for emergency custody, the trial court found that Dade was indigent and appointed David Chambers as her counsel. Thereafter, in the March 2015 probable-cause order, the trial court noted that Dade stated on the record that she did not want an attorney to represent her; thus, the trial court relieved Chambers of his representation of Dade. DHS filed its petition to terminate parental rights in September 2015, and in October 2015, the trial court entered an order reappointing Chambers as Dade's counsel. Chambers represented Dade at the termination hearing.

Dade contends that this case must be reversed because the record fails to demonstrate that her waiver of her right to counsel at the probable-cause hearing was knowing and intelligent as required in *Bearden v. Ark. Dep't of Human Servs.*, 344 Ark. 317, 42 S.W.2d 397 (2001). We cannot reach the merits of this argument because it is not preserved for appeal. Dade was represented by counsel at the termination hearing, yet her counsel failed to raise the waiver-of-counsel issue. The general rule is that an issue must be raised and ruled on below in order to be preserved for appeal; issues cannot be raised for the first time on appeal to this court. *Williams v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 171, at 4, 458 S.W.3d 271, 274. Further, we note that Dade has failed to bring up the record of the probable-cause hearing. Without the transcript of that hearing, we can only speculate as to whether the trial court made the inquiry to determine whether Dade knowingly and intelligently waived her right to counsel. It is appellant's burden to bring up a record that demonstrates error. *Velazquez v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 168, at 5. Therefore, we conclude that Dade's waiver-of-counsel argument is not preserved.

Affirmed.

HIXSON and BROWN, JJ., agree.

*Tabitha McNulty*, Arkansas Public Defender Commission, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.