RITA W. GRUBER, Chief Judge
Sierra Hegi appeals from the Faulkner County Circuit Court's order terminating her parental rights to her son, KD, born January 5, 2017. On appeal, she challenges both the circuit court's findings of statutory grounds and its best-interest determination. We affirm.
This case began on January 7, 2017, when the Arkansas Department of Human Services (DHS) took an emergency hold on two-day-old KD due to abuse, neglect, and parental unfitness. Specifically, the affidavit attached to the petition for emergency custody described environmental issues and concerns that Hegi did not "have the cognitive ability to care for the infant and meet the infant's needs." On February 21, 2017, the court adjudicated KD dependent-neglected, specifically finding the following:
The home showed no signs of being prepared for a newborn baby to reside there; did not have working utilities other than water in one bathroom; was in a state of environmental neglect including dog feces covering the floor in the home. Additionally, the mother appeared to lack the mental capacity to properly feed for and care for a newborn child. Additionally, the mother was observed by DHS at supervised visitation after the juvenile was taken into care and the mother could not demonstrate the ability to properly care for the juvenile without DHS providing guidance.
The court set the goal as reunification with a concurrent goal of relative placement. The court ordered Hegi to submit to a *778 psychological exam and follow the recommendations; participate in counseling; complete parenting classes and demonstrate improved, appropriate parenting skills after completion; obtain and maintain stable and appropriate housing and employment; maintain a clean, safe home; demonstrate the ability to protect the child and keep him safe; and attend all medical appointments set up for the child when notified by DHS.
Hegi received a psychological evaluation on March 14, 2017, which showed that she was in the mid-intellectual-deficit range. In her interview, Hegi told the evaluator that her son was removed from her custody for neglect because he was not eating. She said that he would not eat "fast enough ... [and] acted like he wasn't hungry." She also said that he had gained weight since being in DHS custody and she was unaware how they got him to eat. Hegi reported to the evaluator that she occasionally heard voices in her head. Hegi's mother, with whom Hegi lived when KD was taken, said that Hegi was slow and had anxiety but that she "desire[d] to be right." She said that Hegi did not drive but that she helped around the house by washing dishes and sorting whites and colors for the laundry. The evaluation stated that Hegi would have "moderate difficulty" with independent parenting, would need "a good deal of support and assistance" in any parenting, and "did not present with the capability to effectively parent." Specifically, the evaluation cited her lowered capability to manage stress, the potential for decompensation when under stress, and her lowered intellectual development.
Shortly after the adjudication hearing, KD was hospitalized for RSV and pneumonia and remained there for a month. Doctors discovered that KD suffered from a condition that made swallowing difficult, and he was fitted with a "G-tube" port that allowed him to receive nutrition directly from a tube into his stomach. Hegi was given training through Arkansas Children's Hospital on how to operate the G-tube as well as hands-on participation with KD's foster parents while feeding KD.
The case proceeded and Hegi complied with the case plan by completing parenting classes, completing medical training, attending visitations, attending counseling, and remedying the environmental issues by finding new and appropriate housing. The court did note in the review order on August 22, 2017, that there had been issues with KD's feeding tube after unsupervised visitation. The court held a permanency-planning hearing on December 19, 2017, and found that DHS had made reasonable efforts to provide services towards the permanency plan of reunification and that Hegi had complied with the case plan and made "much" progress toward alleviating the causes of removal. The court continued the goal of reunification but found KD could not be returned to Hegi's custody because she continued to be unable to properly feed him.
On April 13, 2018, DHS filed a petition to terminate Hegi's parental rights.[1] DHS pleaded the failure-to-remedy ground, alleging that KD had been removed from Hegi's custody for environmental issues and because Hegi lacked the cognitive ability to provide for KD's basic needs. DHS contended that one of the primary issues during the pendency of the case was whether Hegi would be cognitively capable of using KD's G-tube and ensuring that his basic health and nutritional needs would be met. DHS stated that in spite of numerous services, classes, encouragement, support, *779 and training having been offered to Hegi, she had not progressed to a point where KD could safely be placed in her custody. DHS alleged that using the feeding tube required an ability to constantly reassess the situation, adapt quickly to any changes, and recall and process information in order to address those changes. It alleged that although Hegi had put forth a good effort, the same concerns that existed at the time KD came into DHS custody-regarding Hegi's cognitive ability to meet KD's need-still existed; Hegi's level of functioning was not likely to change; and none of the services had adequately remedied the cause of removal.
The court held a termination hearing on May 29, 2018. Cheryl Taylor, Hegi's DHS caseworker, testified that KD had been placed in foster care in part because Hegi was not able to feed him correctly with a bottle. She testified that Hegi had been compliant but that despite the services and training, she could not "accomplish" and "master" KD's feeding tube. She also testified that KD had numerous regular medical appointments including occupational and physical therapy, speech therapy, and a nutritionist. She testified that Hegi had lacked the mental capacity to properly feed her newborn, which brought him into DHS custody, and that she continued to lack the ability to properly care for him without guidance. She testified that she did not know of any other services DHS could provide to help Ms. Hegi with cognitive skills and that she asked Hegi if she wanted to go back to Arkansas Children's Hospital for additional training and she replied that she had "had enough" and did not need more training.
Dr. George DeRoeck, the psychologist who performed Hegi's psychological evaluation, testified that there were two significant issues with respect to Hegi's ability to parent KD: (1) her lower intellectual development along with adaptive behavioral deficits and (2) the tendency to decompensate under stress. He added that her anxiety would further interfere with her ability to independently parent an infant. He opined that Hegi would not be able to deal with a medically fragile or medically complicated child. He testified further that it was not a simple issue of Hegi having difficulty caring for a medically fragile child but said that she would "have difficulty if the child had no particular infirmity."
At the conclusion of Dr. DeRoeck's testimony, the following colloquy occurred.
THE COURT : All right. Dr. DeRoeck, before you get down let me just make sure I understand what you're saying.
All right. So, as it relates to her capacity, if the child was-and I don't want to use the word "normal," but for lack of a better word was a normal, healthy child, she might need some help but she could take care of the child, she could learn to do those things?
DR. DEROECK : I felt that at this age that she would not be able to care for the child independently.
One of KD's foster parents, Shawn Pratt, testified that he and his wife had been caring for KD since he had come into DHS custody. He explained how the feeding machine works and that he feeds KD seven times each day, which requires seven inputs and seven measurements. He said that the rate, or speed, at which KD takes the formula changes regularly and that the proper amounts and rates are provided by the nutritionist. He said that he had tried to help Hegi with the machine numerous times but that she did not seem to understand what was going on with the machine when he explained it to her. He said that KD was "a full-time job" and was "on the road" four days each week attending appointments with speech, occupational, *780 and physical therapists; a gastrointestinal doctor; a nutritionist; an ear, nose, and throat doctor; and his pediatrician. He also testified that, in the event Hegi's parental rights were terminated, he and his wife would like to adopt KD.
Hegi testified that she wanted her son returned to her. She said that she did know how to operate the feeding machine, but she did not remember how to measure the formula. She said that she was trying to be a good mother.
The court entered an order terminating Hegi's parental rights on June 12, 2018. It found DHS had proved the failure-to-remedy ground by clear and convincing evidence-that is, that KD had been adjudicated dependent-neglected, had continued to be out of Hegi's custody for twelve months, and, despite a meaningful effort by DHS to rehabilitate the parent and correct the conditions that caused removal, those conditions had not been remedied by the parent. Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(a) (Supp. 2017). Specifically, the court noted that KD was placed in DHS custody for allegations of environmental neglect and that Hegi "lacked the cognitive ability to provide" for KD's basic needs. The court had adjudicated KD dependent-neglected for these reasons and due to Hegi's "failure to demonstrate the ability to provide for the juvenile's basic needs without hands-on assistance." The court found that Hegi had been provided parenting classes, classes at Arkansas Children's Hospital to learn how to use KD's G-tube, nutrition classes, counseling, supervised visitation, and help from KD's foster parents with using the feeding machine, but that she remained unable to operate the feeding tube properly and that this had a direct and immediate impact on KD, who depends on the feeding tube as his sole source of nutrition. The court recognized that Hegi had made progress in the case but found that she had not progressed to a point where KD could safely be placed in her custody. The court specifically cited Dr. DeRoeck's testimony and concerns that Hegi did not present with the capability to effectively parent, and the court expressed particular concern with Dr. DeRoeck's testimony that Hegi had difficulty with adaptive functioning given that a primary component of the feeding machine includes the ability to adjust the setting to ensure that KD is receiving the proper amount of calories at the correct flow. It was a complicated task that required the ability to constantly reassess the situation, adapt quickly to changes, and recall and process information. The court found that Hegi's level of functioning is not likely to change and that none of the services provided had been able to adequately remedy the cause of removal. For the same reasons, the court found by clear and convincing evidence that it was in KD's best interest to terminate, specifically considering the likelihood that KD would be adopted if the termination petition was granted and the risk of potential harm to KD if returned to Hegi.
Hegi filed this appeal from the court's order, arguing that there was insufficient evidence to support the failure-to-remedy ground and insufficient evidence that it was in KD's best interest to terminate Hegi's parental rights.
We review termination-of-parental-rights cases de novo. Dinkins v. Ark. Dep't of Human Servs. , 344 Ark. 207, 213, 40 S.W.3d 286, 292 (2001). At least one statutory ground must exist, in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2017). The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and *781 convincing evidence is clearly erroneous. Shawkey v. Ark. Dep't of Human Servs. , 2017 Ark. App. 2, at 5, 510 S.W.3d 803, 806. Credibility determinations are left to the fact-finder. Id. Finally, the intent behind the termination-of-parental-rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3).
We turn first to Hegi's argument that there is insufficient evidence to support the circuit court's finding on grounds. Hegi does not dispute that KD was adjudicated dependent-neglected and was out of the home for twelve months. She contends, however, that she did not "fail to remedy" the cause of KD's removal. She argues that the issue at termination was whether Hegi was cognitively capable of using KD's feeding tube, which KD did not have when he was removed from her custody. Thus, she contends, her failure to be able to properly use the G-tube was not the "condition that caused removal" and thus cannot be relied on to support the failure-to-remedy ground. We disagree that either the statute or the circuit court's decision was quite so narrow. The failure-to-remedy ground is demonstrated "if despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent." Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(a) . One of the conditions that caused removal in this case was that Hegi lacked the mental capacity to properly feed and care for KD. Despite numerous services throughout the case, this remained true. The removal was based on Hegi's inability to meet KD's nutritional needs but also on the underlying condition arising from Hegi's mental deficiency. This was one of the "conditions" that caused removal, and the court found that it had not been remedied. The court found that KD could not safely be returned to her care.
Hegi also argues that the court's best-interest finding is not supported by sufficient evidence. She argues that there was no testimony regarding how long KD would have to rely on the G-tube. While there was no specific time frame given, KD's foster father testified that KD was being seen by numerous specialists, and there was no indication that these visits would cease any time soon. KD's special needs included more than the G-tube. Moreover, Dr. DeRoeck testified that it was not a simple issue of Hegi having difficulty caring for a medically fragile child but said that she would "have difficulty if the child had no particular infirmity." The intent behind the termination-of-parental-rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3). Finally, credibility determinations are left to the fact-finder. Shawkey , 2017 Ark. App. 2, at 5, 510 S.W.3d at 806.
Hegi also argues that the court's best-interest finding is undermined by the concurrent goal of relative placement. Hegi contends that DHS did not comply with the court's order early in the case to conduct a home study on her cousin. She argues that without a conclusive decision on the relative placement, the court could not conduct a thorough best-interest analysis.
*782 This argument was not raised below and thus may not be addressed on appeal. Dade v. Ark. Dep't of Human Servs. & Minor Child , 2016 Ark. App. 443, at 6, 503 S.W.3d 96, 99 (holding that the general rule is that an issue must be raised and ruled on below in order to be preserved for appeal).
Affirmed.
Hixson and Brown, JJ., agree.

DHS also petitioned to terminate the parental rights of KD's father, Justin Stricklin. He executed a consent to termination and is not a party to this appeal.