PHILLIP T. WHITEAKER, Judge
Steven Burns appeals a Faulkner County Circuit Court order terminating his parental rights to his twin children, EB and LB, arguing there was insufficient evidence to support the circuit court's statutory-grounds findings. Because there was sufficient evidence on which the circuit court could find that Burns abandoned his children, we affirm.
I. Factual and Procedural History
Steven Burns and his ex-wife, Rachel Hendricks, are the parents of EB and LB. Burns and Hendricks have a history of dysfunctionality within their home, which has resulted in their recurring involvement with the Arkansas Department of Human Services ("the Department"). Even before the commencement of this case, they had their parental rights terminated to another child in a separate proceeding in another county, wherein Burns voluntarily relinquished his parental rights to that child.[1]
In May 2017, the Department received a failure-to-protect referral, which alleged that Hendricks and Burns were selling drugs while their children, EB and LB, were present. At the time of this referral, the Department already had an open protective-services case involving EB and LB. The Department made contact with Hendricks. She denied selling or using drugs but tested positive for methamphetamine despite her denial. Hendricks also advised the Department that she and Burns were divorced, that he no longer lived in the home, that she had no idea of his current whereabouts, and that he rarely exercised his visitation although he stayed with them when he did.
Based on the foregoing, the Department exercised a seventy-two-hour hold[2] on the children citing a substantial risk of harm due to drug use and parental unfitness, and the court entered an ex parte order for emergency custody. In that order, the court outlined the parents' history with the Department, including their past drug usage and their previously documented unwillingness and inability to cooperate with the Department to correct the issues that caused removal. Because the same issues were at play here, the court found that removal was necessary for the health and safety of EB and LB. The court also appointed counsel for both Hendricks and Burns.
Subsequently, the court conducted a probable-cause hearing, the hearing on adjudication, *508 and three review hearings. Burns did not participate in any of these proceedings, because his whereabouts were unknown.[3] Burns made his first appearance at the permanency-planning hearing conducted on May 1, 2018. By that time, the children had been in the Department's custody for almost a year, and the circuit court had already entered orders noting that Burns had not had any meaningful contact with the Department and had made no progress toward alleviating or mitigating the causes of EB and LB's removal from the home. More importantly, Burns testified and admitted that (1) he was aware when his children had been taken into custody, (2) he had made no attempt to contact the Department by phone or in person until approximately two months before the hearing, and (3) he had not seen his children since they came into custody. The court entered a permanency-planning order finding that Burns had failed to comply with the case plan and court orders; had made no progress toward alleviating or mitigating the causes of EB and LB's removal from the home; had not had any meaningful contact with the Department; and had not visited with EB and LB at any time while the case was pending. The court changed the goal of the case to adoption.
Based on the change of goal to adoption, the Department filed a petition for termination of Burns's parental rights, citing the following statutory grounds for termination: (1) twelve months outside the home of a noncustodial parent ( Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(b) )(Supp. 2017); (2) abandonment ( Ark. Code Ann. § 9-27-341(b)(3)(B)(iv) ); and (3) aggravated circumstances based on abandonment and little likelihood of successful reunification ( Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(a) ).[4]
After a hearing on the petition, the circuit court entered an order terminating Burns's parental rights based on two statutory grounds: twelve months outside the home of the noncustodial parent ( Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(b) ) and abandonment ( Ark. Code Ann. § 9-27-341(b)(3)(B)(iv) ). Burns now appeals, challenging only the statutory grounds for termination.
II. Standard of Review
On appeal, we review termination-of-parental-rights cases de novo but will not reverse the circuit court's ruling unless its findings are clearly erroneous. Dade v. Ark. Dep't of Human Servs. , 2016 Ark. App. 443, 503 S.W.3d 96. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. Id. In determining whether a finding is clearly erroneous, we have noted that in matters involving the welfare of young children, we will give great weight to the trial court's personal observations. Jackson v. Ark. Dep't of Human Servs. , 2016 Ark. App. 440, 503 S.W.3d 122.
Our case law recognizes that the termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents. Fox v. Ark. Dep't of Human Servs. , 2014 Ark. App. 666, 448 S.W.3d 735. In termination-of-parental-rights matters, the circuit court is required to follow a two-step process by finding first that the parent is unfit and second that termination is in the best interest of the child.
*509 T.J. v. Ark. Dep't of Human Servs. , 329 Ark. 243, 947 S.W.2d 761 (1997) ; Smith v. Ark. Dep't of Human Servs. , 2013 Ark. App. 753, 431 S.W.3d 364. The first step requires proof of one or more of the statutory grounds for termination. Ark. Code Ann. § 9-27-341(b)(3)(B). The second step requires consideration of whether the termination of parental rights is in the child's best interest. Ark. Code Ann. § 9-27-341(b)(3)(A). As a result, the Department bears a heavy burden in seeking to terminate the relationship of parent and child. Fox , supra.
III. Statutory Grounds
On appeal, Burns challenges the sufficiency of the evidence supporting the statutory grounds found to exist by the circuit court. As one of its statutory grounds, the circuit court found that Burns abandoned EB and LB. See Ark. Code Ann. § 9-27-341(b)(3)(B)(iv) (Supp. 2017). Burns contends that there was no evidence that he intended to abandon the children; rather, he asserts that his failure to maintain contact with the children was based on his misguided belief that it would help Hendricks's case. He argues that because there was no evidence of his intent to abandon his children, the court clearly erred in finding abandonment. We disagree.
"Abandonment" is defined in Arkansas Code Annotated section 9-27-303(2)(A) as follows:
(i) The failure of the parent to provide reasonable support for a juvenile and to maintain regular contact with a juvenile through statement or contact when the failure is accompanied by an intention on the part of the parent to permit the condition to continue for an indefinite period in the future;
(ii) The failure of a parent to support or maintain regular contact with a child without just cause; or
(iii) An articulated intent to forego parental responsibility.
See also Norris v. Ark. Dep't of Human Servs. , 2018 Ark. App. 571, at 4-6, 567 S.W.3d 861, 864-65.
Burns's intent argument does not address every subdivision of the statutory abandonment definition. Arkansas Code Annotated section 9-27-303(2)(A) does require an element of intent in subdivisions (i) and (iii); however, subdivision (ii) only requires a failure to support or maintain contact "without just cause." We now consider whether the evidence presented in this case was sufficient to support a conclusion that Burns failed to support or maintain regular contact with his children without just cause. See Ark. Code Ann. § 9-27-303(2)(A)(ii). We conclude that it was.
By his own testimony, Burns admitted that he purposely avoided involvement in the case. He knew that the children were in the custody of the Department; he understood that legal proceedings were being pursued, and he chose not to participate. Granted, Burns offered a myriad of reasons why he made this choice: he mistakenly believed that his involvement would hinder Hendricks's attempts to regain custody of the children; he was afraid; and he did not like or trust the Department from previous experience. The circuit court had a duty to not only hear this explanation but also to weigh it and judge its credibility. The circuit court was not persuaded by these explanations.[5] As for *510 the abandonment ground, the court made the following factual findings:
Specifically, [EB and LB] spent over one year in foster care, and Steven Burns had zero contact or visitation with the juveniles during that year. [Burns] failed to appear at court hearings concerning his children and did not maintain contact with [the Department] to inquire about the welfare of his children. [Burns] testified that he knew that his children were in foster care the entire time, and that he chose not to visit them. [Burns] gave a number of reasons for not visiting his children, including that he was scared, he didn't want to mess up [Hendricks's] case, and he didn't like [the Department] because of his prior case in White County. The Court finds that [Burns] made a choice to bury his head in the sand and that he clearly abandoned his children. [Burns] did, through his actions, demonstrate an intent to forego [sic] his parental responsibilities toward [EB and LB].
Clearly, Burns's explanations for his absence were considered by the court and deemed unjustified. Given his demonstrated credibility issues, the court's findings in this regard were not clearly erroneous. The circuit court was correct; through his actions, Burns abandoned his parental responsibilities toward EB and LB without just cause. We find no error in this regard.
Burns further argues that the familial bond is extremely important and that his rights should not be terminated because he has been a less than model parent. He specifically notes that once he began participating, he complied with what was expected of him; he tested negative on urine samples and visited with his children. He, however, began to visit the children only after the permanency-planning hearing. Unfortunately for Burns, a parent's overtures toward participating in the case plan or following the orders of the court following the permanency-planning hearing and preceding the termination-of-parental-rights hearing is an insufficient reason to not terminate parental rights. Ark. Code Ann. § 9-27-341(a)(4)(A). Moreover, this court has repeatedly held that a child's need for permanency and stability will override a parent's eleventh-hour efforts. Gonzalez v. Ark. Dep't of Human Servs. , 2018 Ark. App. 425, 555 S.W.3d 915 ; Burleson v. Ark. Dep't of Human Servs. , 2017 Ark. App. 616, 535 S.W.3d 655.
Burns further maintains that the Department owed some responsibility for failing to notify him of the case against him, the dates of staffings and hearings, and his right to visit his children. However, the evidence at the hearing revealed that Burns's whereabouts were unknown and that he failed to contact the Department despite his knowledge that his children had been removed from Hendricks's care. In fact, the court specifically found that the Department "stood ready and willing to provide Mr. Burns with the same services offered to Ms. Hendricks during this case, but unlike Ms. Hendricks, Mr. Burns chose not to avail himself of those services." We are not left with a definite and firm conviction that a mistake has been made in this finding.
Finally, Burns contends that if he had counsel before the termination hearing, counsel could have corrected his mistaken belief that it was better for him to absent himself from the proceedings. However, this argument does not change the facts that Burns was absent from the lives of his children for an entire year (one-third of the children's young lives), that the court had appointed him counsel very early in the process, and that his failure to participate contributed to his lack of legal advice. Moreover, the termination statute does not require that the abandonment last for any particular length *511 of time. Norris , supra (three short sporadic visits in nine months before permanency planning); L.W. v. Ark. Dep't of Human Servs. , 2011 Ark. App. 44, 380 S.W.3d 489 (no contact for five or six months).
Burns also challenges the circuit court's finding regarding the other statutory ground for termination. However, our court has made clear that only one ground is necessary to terminate parental rights. Riggs v. Ark. Dep't of Human Servs. , 2019 Ark. App. 185, 579 S.W.3d 129. Thus, we need not address the other ground found by the circuit court.
Affirmed.
Virden and Gladwin, JJ., agree.

In addition to Burns and Hendricks's children, Hendricks has given birth to three other children. Her rights to one of those children has been terminated, and her other two children are in the sole custody of their father. Hendricks's parental rights to EB and LB were also terminated in this action; however, Hendricks is not a party to this appeal.

The Department removed the children on May 9, 2017.

The court directed the Department in every order to make diligent efforts to locate Burns.

The petition also alleged that termination of Burns's parental rights was in the best interest of the children.

Burns admitted providing false testimony to the circuit court concerning his employment, his relationship with Hendricks, and his living arrangements. He also denied drug use but tested positive for controlled substances on a hair-follicle test.