PHILLIP T. WHITEAKER, Judge
Appellant Brittany Baltimore appeals an order of the Pulaski County Circuit Court terminating her parental rights to *321 her three daughters-twins IB and EB (DOB 02/17/2015) and AW (DOB 06/24/2016).[1] Baltimore's counsel has filed a motion to withdraw from representation and a no-merit brief pursuant to Linker-Flores v. Arkansas Department of Human Services , 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(i) (2018), stating that there are no meritorious grounds to support an appeal. The clerk mailed a certified copy of counsel's motion and brief to Baltimore at her last-known address informing her of her right to file pro se points for reversal, but the packet was returned and marked "unclaimed," "unable to forward," and "return to sender." Because there are no issues of arguable merit presented, we affirm and grant counsel's motion to withdraw.[2]
I. Facts and Procedural History
Baltimore is the biological mother of IB, EB, and AW. She has an extensive history with the Arkansas Department of Human Services (Department). In 2012, the Department initiated a dependency-neglect proceeding against Baltimore as to two other children due to her drug usage and her continued association with abusive men.[3] The Department removed those children from her custody after their father was arrested in the home for drug possession, and authorities found cocaine in plain sight and in reach of the children. One of the children, a one-year-old, tested positive for cocaine and codeine. In this previous dependency-neglect action, the court found Baltimore unfit, in part, due to her drug usage. In July 2013, the court terminated her parental rights finding that despite being offered services aimed at rehabilitation, Baltimore had failed to address her substance-abuse issues, had failed to visit the children, had failed to comply with the case plan, and had repeatedly lied to the court, prompting the court to suggest she be prosecuted for perjury.
In this current dependency-neglect action, the Department received a hotline referral in May 2017 after two-year-old IB was treated at Arkansas Children's Hospital (ACH) for a four-day-old fractured femur that had required a surgical repair. Baltimore's explanation as to how the injury occurred was not plausible and did not match the presentation or severity of the child's injuries.[4] Additionally, Baltimore was uncooperative during the initial investigation. While she admitted that IB has a twin, she refused to tell the investigator where the child could be located and denied having a third child. When the Department eventually located the other children, they were placed in protective custody under a seventy-two-hour hold. Subsequent drug testing revealed that IB had tested positive for both cocaine and marijuana and that her one-year-old sister, AW, had tested positive for marijuana.
After the seventy-two-hour hold, the Department initiated this dependency-neglect *322 action. The court adjudicated the children dependent-neglected in July 2017 due to parental unfitness, inadequate supervision, failure to protect, medical neglect, and injury inconsistent with the history provided. In addition, the court made two separate aggravated-circumstances findings. Considering the severity of the child's injury and Baltimore's significant delay in obtaining treatment for the child, the court found by clear and convincing evidence that one of the children (IB) had been subjected to extreme cruelty through medical neglect. Considering the facts and circumstances of the previous dependency-neglect action and Baltimore's lack of progress therein, the court also found by clear and convincing evidence that there was little likelihood of successful reunification despite a reasonable offer of services. However, despite its finding of aggravated circumstances, the court did not fast track the case or authorize the filing of a petition for termination of parental rights at that time, instead opting to allow Baltimore the opportunity to attempt reunification.
Baltimore did not take advantage of the opportunity for reunification. While she participated in services and court proceedings, the court found that she exerted only "some" effort at complying with the case plan, that she had not made any substantive progress, and that she had not addressed the core issues at stake in the case. The court also noted that her testimony with regard to her relationship with Tommy Wright-her abusive boyfriend and the alleged offender in the injury of IB-was not credible.
The Department subsequently filed a petition for termination of parental rights alleging that termination of Brittany's parental rights was in the best interest of the children; that the children are adoptable; and that potential harm would be caused if the children were returned to Brittany's custody.[5] The petition also alleged the following statutory grounds as to Brittany: twelve-month failure to remedy ( Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(a) ) (Supp. 2017); subsequent other factors ( Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)(a) ); aggravated circumstances-extreme cruelty ( Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(a)(3)(B)(i) ); aggravated circumstances-little likelihood of successful reunification ( Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(a)(3)(B)(i) ); and prior involuntary termination ( Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(a)(4) ). Following a termination hearing, the trial court entered an order terminating Baltimore's parental rights based on all five grounds alleged in the petition and based on the court's best-interest finding, including its consideration of the adoptability of the children and the potential harm if they were returned to Baltimore's care.
Baltimore filed a timely notice of appeal, and her counsel has filed a no-merit brief. After carefully examining the record and the no-merit brief, we hold that Baltimore's counsel has complied with the requirements for a no-merit parental-termination appeal and that the appeal is wholly without merit for the reasons set forth below.
II. Standard of Review
We conduct a de novo review of termination-of-parental-rights cases because the rights of natural parents are not to be passed over lightly, and the termination of parental rights is an extreme remedy in derogation of these natural rights. Fox v. Ark. Dep't of Human Servs. , 2014 Ark. App. 666, 448 S.W.3d 735. In *323 order to terminate parental rights, a trial court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii). Additionally, the trial court must find proof, by clear and convincing evidence, of one or more of the grounds for termination listed in section 9-27-341(b)(3)(B). Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. Posey v. Ark. Dep't of Human Servs. , 370 Ark. 500, 262 S.W.3d 159 (2007). In this de novo review process, we will not reverse the trial court's ruling unless its findings are clearly erroneous. Dade v. Ark. Dep't of Human Servs. , 2016 Ark. App. 443, 503 S.W.3d 96. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. Id. In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the trial court to judge the credibility of witnesses. Id.
III. Analysis
A. Statutory Grounds
The trial court in this case found the Department had proved the following statutory grounds by clear and convincing evidence: (1) twelve-month failure to remedy; (2) subsequent other factors; (3) aggravated circumstances-extreme cruelty; (4) aggravated circumstances-little likelihood of successful reunification; and (5) prior involuntary termination. Although the trial court found five statutory grounds for termination, we need only address one of these grounds because only one ground is necessary to support termination. Wagner v. Ark. Dep't of Human Servs. , 2018 Ark. App. 554, at 8, 566 S.W.3d 478, 483. Here, as one of the statutory grounds for termination under Arkansas Code Annotated section 9-27-341(b)(3)(B)(ix)(a)(4) , the trial court found that Baltimore had previously had her parental rights involuntarily terminated as to another child. The trial court's finding was not clearly erroneous because evidence was presented, and Baltimore admitted, that her rights to at least two children had previously been involuntarily terminated as a result of neglect and her drug usage.
B. Best Interest
The trial court also held that it was in the best interest of the children to terminate Baltimore's parental rights. More specifically, the trial court found that the children are adoptable based on the testimony of an adoption specialist that she had identified over 250 families who could potentially adopt the children as a sibling group. Thus, the trial court's finding of adoptability is supported by the evidence.
The trial court also concluded that potential harm would result if the children were returned to their mother's custody. The court found that Baltimore is not a fit and appropriate parent; that her children had been harmed while in her care; and that the children had to be removed for their own safety. We conclude that sufficient evidence supports the court's findings and note that Baltimore did not exhibit enough progress to allay the concerns of the court regarding her parental fitness or her emotional and psychological stability. In our de novo review, we note that Dr. Deyoub performed two assessments on Baltimore, one in connection with the previous dependency-neglect action and again *324 in this current action. While he noted that Baltimore had matured during the five years between the two assessments, Dr. Deyoub opined that Baltimore still possessed an inability to successfully parent or protect the children from harm.
The trial court further found that potential harm would result if custody was returned to Baltimore due to her continued participation in dysfunctional and violent relationships. Here, there was evidence that Tommy Wright was physically abusive to Baltimore, even when she was pregnant with the twins, and that he might have caused IB's injuries. Baltimore admitted that Wright was physically abusive toward her but insisted that he would never harm the children and denied that he had harmed IB. She claimed that she was no longer in a relationship with Wright, but there was evidence to the contrary, including the social worker's testimony that she had on one occasion found Wright alone in Baltimore's apartment. These factors clearly support the trial court's finding that Baltimore would be unable to do what was necessary to establish a successful reunification and that potential harm would result if the children were returned to her custody.
In assessing potential harm, a court is not required to identify a specific potential harm; rather the potential-harm analysis is to be conducted in broad terms. Shawkey v. Ark. Dep't of Human Servs. , 2017 Ark. App. 2, at 7, 510 S.W.3d 803, 807. Based on the foregoing, the trial court did not clearly err in its best-interest determination, and its conclusion does not provide a basis for reversal.
Affirmed; motion to withdraw granted.
Klappenbach and Vaught, JJ., agree.

The court also terminated the parental rights of Tommy Wright, the biological father of A.W. Wright did not appeal the termination decision and is not a party to this appeal. David Thomas, the legal father of IB and EB, is also not a party to this appeal because, due to service-of-process issues, his rights were not terminated by the appealed order.

The only adverse ruling presented here is the termination decision itself.

Another of Baltimore's children is in the permanent custody of the maternal grandmother.

Baltimore explained that a six- or seven-year-old girl at a park hit IB with a stick a few days earlier; that the leg was really swollen but she was unaware that it was broken; and that she would have taken her to the hospital sooner if she had realized it was broken.

The petition was amended after the termination hearing to make it clear that the parental rights of David Thomas, the legal father of IB and EB, had not been terminated and that he was the sole remaining parent subject to the petition.