Cite as 2025 Ark. App. 518

# ARKANSAS COURT OF APPEALS
## DIVISION I
### No. CV-25-89

| | |
|---|---|
| MARLOCIA MASON<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | Opinion Delivered October 29, 2025<br><br>APPEAL FROM THE PHILLIPS COUNTY CIRCUIT COURT [NO. 54JV-22-48]<br><br>HONORABLE KATHIE HESS, JUDGE<br><br>AFFIRMED; MOTION GRANTED |

**WENDY SCHOLTENS WOOD, Judge**

Counsel for Marlocia Mason brings this no-merit appeal from the Phillips County Circuit Court's order entered on November 19, 2024, terminating her parental rights to Minor Child 1 (MC1) (DOB 06/11/17); Minor Child 2 (MC2) (DOB 02/26/20); and Minor Child 3 (MC3) (DOB 08/29/21).[1] Pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(j), Mason's counsel has filed a no-merit brief asserting that there are no issues of arguable merit to support an appeal. Counsel has also filed a motion asking to be relieved. The clerk of this court sent a copy of the brief and motion to be relieved to Mason, informing her that

---

[1]Mason is also the mother of Minor Child 4 (MC4) (DOB 10/28/15), who was in the custody of her maternal grandfather at the time the children were taken, remains in his custody, and is not a part of this case.

she had the right to file pro se points for reversal under Arkansas Supreme Court Rule 6-9(j)(3).[2] She has filed no points. We affirm the order terminating Mason's parental rights and grant counsel's motion to withdraw.

## I. *Facts*

This case began on September 7, 2022, when the Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect for MC1, MC2, and MC3. In the affidavit attached to the petition, family-service worker (FSW) Yolanda Burton asserted that DHS received a hotline referral call at 8:51 p.m. on September 2 alleging that four juveniles had been left home all day without food or a caretaker. On September 3, Burton inspected the home and interviewed Mason. Mason admitted to Burton that she had left the children alone around 6:00 or 7:00 p.m. for about an hour. She said that when she returned home, the children were gone. She found them at the home of her aunt. Mason also admitted that she smokes marijuana daily but does so outside away from the children. In a drug screen conducted by Burton, Mason tested positive for benzodiazepines, opiates, and THC. Burton reported that there was trash on the floor, two sinks filled with dirty dishes, an odor in the refrigerator, and several roaches in the kitchen cabinets. She also saw an orange extension cord lying on the bed that was connected to a wall outlet in the hallway. She said the toilet appeared not to be working and that it

---

[2]The packet was twice returned marked as "undeliverable" and "not deliverable as addressed/unable to forward."

contained feces and brown water. She also stated that there was a leak in the bathroom ceiling with water running down the wall and mold along the wall to the floor.

The circuit court entered an ex parte order for emergency custody on September 8 and an adjudication order on November 14 finding the children dependent-neglected due to drug abuse and environmental neglect, noting that Mason stipulated to environmental neglect and inadequate supervision. The court ordered the children to remain in the custody of DHS but authorized a trial home placement with Mason. The court set the goal of the case as reunification and ordered Mason to submit to random drug screens, complete parenting classes, obtain and maintain stable housing, complete a drug-and-alcohol assessment and follow the recommendations, and sign up for GED classes at Phillips Community College.

At a review hearing on January 18, 2023, the court determined that Mason was in compliance with the case plan and court orders and returned custody to her, changing the goal of the case to family preservation by maintaining the children in the home. However, at a special hearing held on April 26, the court found that Mason had recently tested positive for illegal substances that she had denied using, and it ordered her to submit to a hair-follicle test. It had placed a seventy-two-hour hold on the children on April 4 due to Mason's drug use, MC1's multiple absences from school, and Mason's "erratic behavior" in court that day. The court ordered Mason to obtain an expedited hair-follicle drug screen.

On April 28, DHS filed a second petition for ex parte emergency custody and dependency-neglect, attaching an affidavit from FSW Angel Bailey stating that DHS had

3

been unable to execute the seventy-two-hour emergency hold on the children because Mason and the children had not been home in the numerous visits that DHS and the police department made there to locate them. Bailey reported that Mason's and the children's whereabouts were unknown. The court entered an ex parte order placing the children in DHS's legal custody the same day.

DHS did not locate Mason or the children until June when an allegation of abuse involving the three children was made in Florida against Mason. Mason was detained in Florida, and the children were flown back to Arkansas. Mason returned to Arkansas in August, was immediately arrested for kidnapping, and was detained until October. The kidnapping charges remained pending at the time of the termination hearing.

An agreed review-hearing order was entered on December 21, and the goal remained reunification. All visitation was conducted by video due to Mason's flight risk. Mason was seeking employment, attending counseling, submitting to drug screens, and attending visitation. At a February 2024 permanency-planning hearing, evidence revealed that Mason had completed parenting classes, had moved into a new home, was employed, had taken a test to enroll in a GED program, and had tested negative on drug screens in January and February. The court continued the goal of reunification.

In a review order entered on June 14, 2024, the court changed the goal to adoption. The court found that Mason had made no further progress and was no closer to reunification than she had been when the case first opened. Specifically, the court found the foster parent's testimony regarding her concerns about the safety of the children in light of Mason's lifestyle

4

of violence and her drug use to be credible.[3] The court noted Mason's refusal to allow DHS staff to observe her drug screens even though observation had been ordered by the court. The court found Mason consistently cut her visits short, vaped during one visit, and had outbursts during other visits. The court also found that Mason had anger issues and outbursts throughout the case.

On October 2, DHS filed a petition for termination of parental rights. On October 8, upon agreement of the parties, the court ordered Mason to have a nail-bed drug test. The court held a termination hearing on November 5.

FSW Bailey testified about Mason's fleeing with the children to Florida in April 2023 after the court had ordered the children to be placed back in DHS custody. She said that DHS was able to locate the family only after Mason was arrested for abusing the children in Florida in June. In addition to the abuse, MC3's hair-follicle test was positive for methamphetamine, cocaine, and THC when he was returned to DHS custody after being flown back from Florida in June. Bailey also testified that there was a report of abuse by Mason on June 16, 2024, against Mason's oldest child, MC4, who lives with Mason's father. There was a true finding in that case that MC4 sustained a knot on her head and a nosebleed when Mason slammed her on the floor by her hair. Bailey said that although Mason was allowed up to four hours for her weekly video visits with the children, she took only ten to twenty-five minutes before ending the visits when she became upset or angry. Bailey testified

---

[3]The foster parent described Mason's car being "shot at" and the windows of her car "being busted out on another occasion."

that Mason had been aggressive with her and that there were several live videos of Mason fighting different people. She played a video of Mason in a fight the weekend before the termination hearing in which Mason can be heard cussing and saying that she wanted to "beat up the DHS worker."

Bailey testified that Mason never completed a drug-and-alcohol assessment, which had been ordered when the case was opened. She said that Mason was taken to have the nail-bed drug screen ordered by the court in October, but she was unable to complete it because her nails were not long enough. According to Bailey, Mason refused drug screens on October 10 and 18, 2024, and had a positive drug screen for THC on October 23, 2024. She said that Mason would not allow staff to monitor the drug screens and that there were several negative drug screens in which the temperatures of the urine samples had been abnormal. Bailey recommended that Mason's parental rights be terminated due to Mason's violent tendencies and drug use. Finally, she testified that there were no barriers to adoption and that the children's current placements were interested in adopting them.

Mason presented the testimony of Nikki Clattworthy, Mason's coworker, who testified that she drove Mason home three or four times a week, that Mason's attendance at work is good, and that Mason does a good job in maintenance. Clattworthy testified that she did not work directly with Mason but said that she "is fun to be around" and has made friends. Clattworthy testified that she did not socialize with Mason outside of work.

The ad litem recommended termination, stating that the case had been open since 2022 and that Mason had "every opportunity for reunification." She said that Mason had

6

continued to have uncontrollable anger outbursts, including one the weekend before the termination hearing in which she threatened the DHS worker; that the children had been physically abused while the case was open; and that they were at risk of harm when they were with Mason.

The court entered an order terminating Mason's parental rights on November 19, 2024, on the grounds of twelve months failure to remedy; willful failure to provide significant material support; subsequent factors; and aggravated circumstances—little likelihood of successful reunification. *See* Ark. Code Ann. § 9-27-341(b)(3)(B)(i), (ii), (vii), & (ix)*(a)(3)* (Supp. 2023). The court also found termination was in the children's best interest, specifically considering adoptability and potential harm.

## II. *Standard of Review*

Arkansas Supreme Court Rule 6-9(j)(1) allows counsel for an appellant in a termination case to file a no-merit brief and a motion to withdraw if, after studying the record and researching the law, counsel determines that the appellant has no meritorious basis for appeal. In the brief, counsel must include an argument section that lists all circuit court rulings that are adverse to the appellant on all objections, motions, and requests made by the party at the hearing from which the appeal arose and an explanation of why each adverse ruling is not a meritorious ground for reversal. Ark. Sup. Ct. R. 6-9(j)(1)(A). In evaluating a no-merit brief, we determine whether the appeal is wholly frivolous or whether there are any issues of arguable merit for appeal. *Linker-Flores, supra*; *Cullum v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 34.

7

## III. *Discussion*

The only adverse ruling is the circuit court's termination decision. We review termination-of-parental-rights cases de novo but will not reverse the circuit court's decision unless its findings are clearly erroneous. *Dade v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 443, at 2, 503 S.W.3d 96, 97. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* at 2, 503 S.W.3d at 97. In determining whether a finding is clearly erroneous, we have noted that in matters involving the welfare of young children, we will give great weight to the circuit court's personal observations. *Jackson v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 440, at 5, 503 S.W.3d 122, 126.

Termination requires a finding of at least one statutory ground and a finding that termination is in the child's best interest. *Lloyd v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 461, at 8, 655 S.W.3d 534, 540. Arkansas Code Annotated section 9-27-341(b)(3) requires a circuit court's order terminating parental rights to be based on clear and convincing evidence. *Id.*, 655 S.W.3d at 540. Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Baker v. Ark. Dep't of Hum. Servs.*, 340 Ark. 42, 48, 8 S.W.3d 499, 503 (2000). This court gives a high level of deference to the circuit court because the circuit court is in a superior position to observe the parties before it and to judge the credibility of the witnesses and the weight of the evidence. *Id.*, 8 S.W.3d at 503. Finally, the intent behind the termination-of-parental-rights statute is to provide permanency in a child's life when it is not possible to return the

child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3).

Counsel argues that there is no merit to an appeal of the circuit court's finding of grounds for termination. We agree that there would be no merit to an appeal of the circuit court's aggravated-circumstances finding—specifically, its determination that there is little likelihood that services to the family will result in successful reunification. Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)(B)(i)*. Here, although custody of the children was returned to Mason within months after the case was opened, the court ordered the children back in DHS's custody after Mason tested positive for drugs, failed to ensure MC1's attendance at school, and behaved erratically at a hearing. Then, instead of complying with the court's order, Mason fled to Florida with the children. DHS located the family several months later only after an investigation was opened in Florida concerning physical abuse of the children by Mason. When the children returned to Arkansas, MC3 tested positive for methamphetamine, cocaine, and THC. Mason was charged with three counts of kidnapping the children, and the charges were still pending at the time of the termination hearing.

In addition, despite being given another year to work toward reunification after her return from Florida, Mason made little progress. She never regained more than supervised video visitation and exercised only a fraction of the visitation time she was allotted due to her angry outbursts. There was a true finding of abuse by Mason just months before the termination hearing against Mason's oldest child, MC4. Further, a positive drug screen in

October 2024, several abnormal drug screens the same month, and Mason's refusal to allow DHS to monitor her drug screens indicate that she has not remedied the issues related to her substance abuse.

Although Mason may have completed some parts of the case plan, compliance with a case plan does not justify reversing a termination case if the appellant continued to make decisions adverse to the children, as Mason did here. *Chase v. Ark. Dep't of Hum. Servs.*, 86 Ark. App. 237, 241, 184 S.W.3d 453, 455 (2004). What matters is whether Mason's completion of portions of the case plan achieved the intended result of making her capable of caring for the children. *Wright v. Ark. Dep't of Hum. Servs.*, 83 Ark. App. 1, 7, 115 S.W.3d 332, 335 (2003). The evidence set forth above establishes that despite two years of DHS services, Mason did not benefit from the services or gain sufficient skills to safely parent her children, and there is little likelihood that services to the family will result in successful reunification.

Mason's counsel also argues that there is no merit to an appeal of the circuit court's best-interest finding. When making the best-interest finding, a circuit court is required to consider the likelihood of adoptability and the potential harm to the health and safety of the child that would be caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A). Potential harm is viewed in broad terms and in a forward-looking manner. *Myers v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 46, at 16, 660 S.W.3d 357, 369. In determining potential harm, the circuit court may consider past behavior as a predictor

10

of the potential for harm if the child is returned to the parent. *Furnish v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 511, at 14, 529 S.W.3d 684, 692.

Mason's counsel points out that FSW Bailey testified that the children are adoptable, that there were no barriers to adoption, and that their current placements are all interested in adopting the children.[4] This is sufficient to support a circuit court's consideration of adoptability in its best-interest finding. *Cole v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 121, at 6–7, 543 S.W.3d 540, 544. Counsel also asserts that Mason's violent behavior, her failure to submit to the court-ordered drug-and-alcohol assessment, the true findings of abuse against the children, MC3's positive hair-follicle test, and Mason's continued drug use created enough potential harm to affirm the circuit court's best-interest finding. A parent's past behavior is often a good indicator of future behavior. *Schaible v. Ark. Dep't Hum. Servs.*, 2014 Ark. App. 541, at 8, 444 S.W.3d 366, 371.

From our review of the entire record and the brief presented by Mason's counsel, we have determined that counsel has complied with the requirements for no-merit appeals in termination cases, and we hold that the appeal is wholly without merit. Accordingly, we affirm the termination order and grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.

BARRETT and THYER, JJ., agree.

---

[4]MC1 and MC3 were placed with MC1's paternal grandmother, and MC2 was placed with his paternal grandmother.

11

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

One brief only.