BRANDON J. HARRISON, Judge
Rema Bailey appeals the termination of her parental rights to four of her children.[1] She argues that the circuit court erred in finding that she posed a risk of potential harm to her children and that the Arkansas Department of Human Services (DHS) failed to provide adequate services. We affirm.
On 9 January 2017, DHS petitioned for emergency custody of Bailey's five children, who ranged from three months to seven years of age. The affidavit attached to the petition explained that DHS was notified in October 2016 after the infant, K.B., was born with amphetamines in his system. DHS opened a protective-services case in November and discovered that K.B. had been admitted to Arkansas Children's Hospital (ACH) on December 25. ACH voiced concern over the parents' fighting at the hospital and their refusal to participate in the case, including not assisting in changing or feeding K.B. On 4 January 2017, Bailey was drug-screened and was positive for methamphetamine. She denied using drugs and blamed her husband for possibly putting drugs in her food. At that time, a seventy-two-hour hold was placed on the other four children; K.B. was discharged and a hold was placed on him the next day. DHS discovered that three of the children were heavily infested with lice. The affidavit also noted a previous protective-services case, which was opened due to environmental neglect and the parents' testing positive for methamphetamine.
The circuit court granted emergency custody and later found probable cause to continue custody with DHS. In its probable-cause order, the court ordered that the parents be referred for a drug-and-alcohol assessment and marital counseling and that both parents submit to a drug screen that day (12 January 2017) and as requested by DHS.
In March 2017, the court adjudicated the children dependent-neglected. The parties stipulated to the adjudication "based on parental unfitness due to parental drug use." The court ordered the parents to obtain and maintain stable and appropriate housing, income, and transportation; complete parenting classes; complete a drug-and-alcohol assessment and follow the recommendations; complete domestic-violence classes; resolve all criminal issues; and submit to random drug screens and hair-follicle testing. The court noted in a September 2017 review order that the parents had submitted to a drug-and-alcohol assessment but needed to follow the recommendations of that assessment.
The circuit court conducted a permanency-planning hearing on 30 November 2017. The permanency-planning order, which was not entered until 5 January 2018, continued *905 the goal of the case as reunification. The court found that the four older children had begun a trial placement with Bailey, while K.B., who is medically fragile, remained in his foster placement. The court also found that Bailey had obtained housing, income, and transportation and had completed a drug-and-alcohol assessment along with the recommended treatment.
On 25 January 2018, a fifteen-month review hearing was held, and the resulting written order, entered on February 2, noted that Bailey had completed parenting classes and domestic-violence classes. Bailey had also submitted to drug screens, which had been negative. Bailey was ordered to maintain order and cleanliness in her home, to not have overnight visitors, and to not use any caregivers for the children unless approved by DHS. It appears that another review hearing was held four days later, on January 29, but the written review order was not entered until April 24. In that order, the court found that it was in the "best interest of the juveniles that the goal of the case shall continue to be adoption following termination." Prior to this order, the goal of the case had been reunification. However, on February 1, DHS removed the children from their temporary placement with Bailey after it discovered that she had been evicted from her housing, had lost her job, and had been living in motels. DHS had also received the results of a hair-follicle test submitted on January 25, which showed that Bailey was positive for methamphetamine "well over the cutoff which indicated a fairly serious relapse."
On 20 April 2018, DHS petitioned to terminate Bailey's parental rights, alleging three statutory grounds for termination: failure-to-remedy, subsequent-factors, and aggravated-circumstances. See Ark. Code Ann. § 9-27-341(b)(3)(B)(i), (vii), & (ix) (Supp. 2017). DHS also identified potential harm from Bailey's lack of stability, her relapse in drug use, and her inability to meet the needs of the children. After a two-day hearing, the circuit court accepted Bailey's voluntary termination of her parental rights to K.B. and found that it was in the other four children's best interest that her parental rights be terminated. In its written order, the court found that DHS had proved the failure-to-remedy and aggravated-circumstances grounds, that the children were adoptable, and that the children would be at substantial risk of harm if returned to Bailey because she had "not demonstrated the necessary stability." The court also found that "the domestic violence and the on again, off again relationship between the parents is a risk for the children given they [the parents] are not able to stay away from each other." Bailey has now appealed the termination order.
A circuit court's order that terminates parental rights must be based on findings proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2017); Dinkins v. Ark. Dep't of Human Servs. , 344 Ark. 207, 40 S.W.3d 286 (2001). Clear and convincing evidence is proof that will produce in the fact-finder a firm conviction on the allegation sought to be established. Dinkins , supra. On appeal, we will not reverse the circuit court's ruling unless its findings are clearly erroneous. Id. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. Id. In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the circuit court to assess the witnesses' credibility. Id.
*906 While Bailey's argument on appeal is somewhat jumbled, it can be divided into two primary issues: (1) whether DHS failed to provide adequate services, and (2) whether the circuit court erred in finding that she posed a risk of potential harm to her children.
I. Adequate Services
Bailey asserts that DHS did not sufficiently inform her that she could request help, did not provide adequate budgeting assistance, and did not offer services tailored to "how to complete the requirements of the case plan while maintaining employment and caring for the kids." However, Bailey did not appeal from the orders in which the circuit court specifically found that DHS had made reasonable efforts to provide services, and she is now barred from challenging those prior findings. Martin v. Ark. Dep't of Human Servs. , 2017 Ark. 115, 515 S.W.3d 599. In addition, only one of the statutory grounds relied on by the circuit court requires as an element of proof meaningful reunification services by DHS-the failure-to-remedy ground. Aggravated circumstances, on the other hand, does not require proof that DHS provided meaningful or appropriate reunification services to Bailey. Because Bailey's argument does not apply to the aggravated-circumstances ground, and thus that ground is not challenged by her, we affirm on that unchallenged ground alone. Benedict v. Ark. Dep't of Human Servs. , 96 Ark. App. 395, 242 S.W.3d 305 (2006).
II. Potential Harm
Under Arkansas law, to terminate parental rights, a circuit court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i)-(ii). This potential-harm inquiry should be conducted in broad terms, and the focus is on the potential harm to the health and safety of a child that might result from continued contact with the parent. Tadlock v. Ark. Dep't of Human Servs. , 2009 Ark. App. 841, 372 S.W.3d 403. The circuit court is not required to find that actual harm would result or to affirmatively identify a potential harm. Id.
Bailey contends there was no evidence that clearly showed she was incapable of taking her children home and adequately caring for their health, safety, and welfare. She claims that the trial placement had been ended for "minor issues" and that if DHS had provided adequate services, the likelihood of the children being removed from the trial placement "would have significantly decreased." She argues that she made "measurable progress" toward obtaining reunification.
Our case law is clear that even full compliance with the case plan is not determinative; the issue is whether the parent has become a stable, safe parent able to care for his or her child. Shaffer v. Ark. Dep't of Human Servs. , 2016 Ark. App. 208, 489 S.W.3d 182. The evidence presented to the circuit court showed that Bailey had four different vehicles since November 2017; had lived in five different locations throughout the pendency of the case; had no housing, income, or transportation when the trial placement ended, which was over twelve months into the case; and had tested positive for methamphetamine in January 2018, which was twelve months into the case. Under these circumstances, *907 we affirm the circuit court's finding that Bailey's lack of stability posed a risk of potential harm to the children if returned to her custody.
Affirmed.
Klappenbach and Glover, JJ., agree.

The circuit court also terminated the rights of the children's father, James Bailey, but he is not a party to this appeal.