Cite as 2020 Ark. App. 21

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-19-653

| | |
|---|---|
| JAMIE CARPENTER<br><br>APPELLANT<br><br>V.<br><br><br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br>APPELLEES | Opinion Delivered: January 15, 2020<br><br>APPEAL FROM THE MISSISSIPPI COUNTY CIRCUIT COURT, CHICKASAWBA DISTRICT<br>[NO. 47BJV-17-126]<br><br>HONORABLE RALPH WILSON, JR., JUDGE<br><br>AFFIRMED |

**PHILLIP T. WHITEAKER, Judge**

Appellant Jamie Carpenter appeals the order of the Mississippi County Circuit Court terminating her parental rights to her son, N.H. Carpenter contends that the circuit court clearly erred in its findings regarding the statutory grounds for termination, and she also challenges the court's finding that termination was in N.H.'s best interest. We affirm.

I. *Factual and Procedural Background*

The Arkansas Department of Human Services (DHS) removed N.H. from Carpenter's custody based on allegations of environmental neglect. At that time, Carpenter and N.H. lived with Carpenter's mother, whose home was "infested with roaches and dogs." DHS initiated a dependency-neglect proceeding, and the court adjudicated N.H. dependent-neglected on December 14, 2017, on the basis of environmental neglect. The

court ordered Carpenter to comply with its "standard welfare orders," which expressly included obtaining and maintaining clean, safe, and stable housing, and the goal of the case was established as reunification.

The court monitored the proceeding with two review hearings conducted in March and July 2018. In March, the court noted that Carpenter "does not have stable or appropriate housing at this time and is living with a sister who has a history with the Department." Specifically, the court found that Carpenter "has moved at least three times during this case and currently does not have stable or appropriate housing." In July, the court once again found Carpenter unfit, noting not only her housing instability but also a positive drug screen. With respect to DHS, the court found that it had complied with the case plan and court orders in that it had provided, referred, or otherwise offered services to Carpenter. The court also specifically found that DHS had made reasonable efforts to provide family services and finalize a permanency plan for N.H.

The court conducted a permanency-planning hearing in October 2018. The court found that Carpenter had substantially complied with the case plan. The court noted, however, that she had not maintained stable housing, had not provided DHS with a current address, and had relocated multiple times since March 2018. The court ordered Carpenter to obtain and maintain appropriate housing and directed her to "work diligently toward correcting the conditions that caused removal and prevent return of the child to his home." Once again, the court found that DHS had made reasonable efforts to finalize a permanency plan, "specifically, early intervention services, referrals for services, parenting

2

classes, transportation, supervised visitation, [and] worker visits." The court, however, ordered DHS to assist Carpenter with obtaining her birth certificate. Ultimately, the court determined that the goal of the case should be to authorize a plan for adoption with DHS filing a petition for termination of parental rights.

DHS filed its petition for termination of parental rights alleging three statutory grounds: (1) twelve-month failure to remedy, Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(*a*) (Supp. 2017), citing Carpenter's failure to obtain and maintain stable housing throughout the pendency of the case; (2) subsequent other factors, Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)(*a*), noting that in addition to her inability to maintain stable housing, Carpenter had several positive drug screens for methamphetamine and THC and had been incarcerated briefly in September 2018; and (3) aggravated circumstances, Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(*a*)(*3*)(*B*)(*i*), pointing out that DHS had been providing services since November 2017 but that Carpenter had nonetheless been unable to obtain stable and appropriate housing to which N.H. could be returned. DHS further alleged that the termination of Carpenter's parental rights was in N.H.'s best interest.

After a hearing on the petition, the circuit court found that DHS had proved each of the three statutory grounds alleged in its termination petition and that termination of Carpenter's parental rights would be in N.H.'s best interest. On appeal, Carpenter challenges both the court's statutory-grounds and best-interest findings.

II. *Standard of Review*

We review termination-of-parental-rights cases de novo but will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Dade v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 443, 503 S.W.3d 96. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, we have noted that in matters involving the welfare of young children, we will give great weight to the circuit court's personal observations. *Jackson v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 440, 503 S.W.3d 122.

Our caselaw recognizes that the termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents. *Fox v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 666, 448 S.W.3d 735. In termination-of-parental-rights matters, the circuit court is required to follow a two-step process by finding first that the parent is unfit and second that termination is in the best interest of the child. *T.J. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997); *Smith v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 753, 431 S.W.3d 364. The first step requires proof of one or more of the statutory grounds for termination. Ark. Code Ann. § 9-27-341(b)(3)(B). The second step requires consideration of whether the termination of parental rights is in the children's best interest. Ark. Code Ann. § 9-27-341(b)(3)(A). As a result, DHS bears a heavy burden in seeking to terminate the relationship of parent and child. *Fox, supra*.

III. *Discussion*

4

## A. Statutory Grounds

In her first point on appeal, Carpenter challenges the circuit court's conclusion that DHS proved each of the three statutory grounds alleged in the termination petition. She asserts that the common factor in all three grounds pled by DHS was her "struggle to find and maintain appropriate housing." She argues that DHS's failure to assist her in getting her birth certificate and a valid identification card was the primary impediment in her struggle. If DHS had helped her acquire these things in a timely fashion, she argues, "it is likely that she would have been in a home of her own well before" the termination hearing. In short, the crux of her argument is that DHS failed to make reasonable efforts to provide her with appropriate services in order to help her remedy the issue that caused the removal of her child, i.e., obtaining and maintaining stable and appropriate housing. We disagree.

In multiple orders throughout the case, the circuit court made findings that DHS had made reasonable efforts and provided appropriate services. The March 27 and July 26 review orders and the November 5 permanency-planning order all contained findings that DHS had made reasonable efforts. Carpenter did not appeal from any of these orders. Her failure to challenge those findings precludes us from now reviewing them on appeal. *See Martin v. Ark. Dep't of Human Servs.*, 2017 Ark. 115, at 13, 515 S.W.3d 599, 608 (noting appellant's concession that the failure to challenge the circuit court's prior reasonable-efforts findings precluded the appellate court from reviewing any adverse rulings resulting from those orders not appealed from); *Bailey v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 134, at 5, 572 S.W.3d 902, 906 ("Bailey did not appeal from the orders in which the

circuit court specifically found that DHS had made reasonable efforts to provide services, and she is now barred from challenging those prior findings.").

## B. Best Interest

In her second point on appeal, Carpenter challenges the circuit court's finding that termination was in N.H.'s best interest. In making a best-interest determination, the circuit court is required to consider two factors: (1) the likelihood that the child will be adopted and (2) the potential harm to the child if custody is returned to a parent. Ark. Code Ann. § 9-27-341(b)(3)(A); *Miller v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 239, 492 S.W.3d 113. Carpenter does not challenge the circuit court's finding that N.H. was adoptable; therefore, we address only the potential-harm prong of the circuit court's best-interest finding.

In considering potential harm caused by returning the child to the parent, the circuit court is not required to find that actual harm would result or to affirmatively identify a potential harm. *Reid v. Ark. Dep't of Human Servs.*, 2011 Ark. 187, 380 S.W.3d 918. Potential harm must be viewed in broad terms, including the harm the child suffers from the lack of stability in a permanent home. *Martin*, 2017 Ark. 115, 515 S.W.3d 599.

In its termination order, the circuit court cited numerous factors in support of its potential-harm finding, including Carpenter's inability to maintain housing throughout the case, the fact that she had several positive drug screens during the case, her lack of parenting skills, and the fact that she allowed a registered sex offender to live in her home. Carpenter acknowledges that she struggled with housing throughout the case, but she

argues that the evidence did not demonstrate that N.H. would be at risk of potential harm if returned to her custody.

Carpenter first challenges the circuit court's findings about her positive drug tests. The court heard evidence that Carpenter tested positive for methamphetamine on May 8, 2018, positive for marijuana on October 16, 2018, and positive again for methamphetamine on April 24, 2019. Carpenter argues that she tested positive only three times, and she suggests that her caseworker apparently did not think drugs were enough of a problem to test her more than once a month or so. She further argues that these three positive drug screens were "too isolated to demonstrate continued drug use." Carpenter likens her case to that of *Kight v. Arkansas Department of Human Services*, 87 Ark. App. 230, 189 S.W.3d 498 (2004), in which this court reversed a termination order when the mother worked diligently and successfully through drug treatment and had only one relapse during the course of the case.

Carpenter's situation is distinguishable, however, because her positive drug screens recurred throughout the case, and she did not—as the appellant in *Kight* did—show a pattern of steady upward progress throughout the proceedings. As DHS points out, Carpenter tested positive less than a month before the termination hearing. Caselaw is clear that a parent's continuing use of illegal drugs poses a risk of harm to the children if returned to that parent. *Furnish v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 511, at 13–14, 529 S.W.3d 684, 692; *Howell v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 154, at 6, 517 S.W.3d 431, 435. Moreover, a court may consider past behavior as a predictor of likely

7

potential harm should the child be returned to the parent's care and custody. *Furnish, supra*; *Harbin v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 715, at 3, 451 S.W.3d 231, 233. Carpenter's drug use was ongoing throughout the case, giving the circuit court grounds to believe that it would be ongoing in the future. We cannot say that the circuit court's finding on this issue was clearly erroneous.

Next, Carpenter challenges the circuit court's reliance on the presence of a sex offender in her home. The court heard ample testimony that Carpenter moved into a home with the assistance of the Blytheville Housing Authority; that she allowed two brothers, Rodney and Johnny Lassiter, to move into her home; and that Rodney is a registered sex offender.[1] Carpenter acknowledges that she allowed Rodney to move into her home and that this was prohibited by the terms of her lease. She contends, however, that she had been asking for help to evict him since he first moved in, and she notes her testimony that she had intended to contact the police for assistance as soon as the termination hearing was over.

The court was not obligated to believe Carpenter's testimony, especially when it was controverted by her caseworker, Kashina Carter. Carter denied that Carpenter had complained about the Lassiters living in her apartment or had asked for help getting them out. Carter had been unaware that the Lassiters lived in Carpenter's home until she went

---

[1]Rodney had his own parental rights terminated because of sexual abuse perpetrated on his son, who was only a few years older than N.H.

to the home for a visit the week before the termination hearing. When she arrived at the home on that date, Rodney opened the door but refused to identify himself.

In the termination order, the circuit court expressly stated that it did not believe Carpenter's testimony that she had been trying to rid herself of the Lassiter brothers, nor did it believe her statement that she contacted DHS for assistance in doing so. In essence, the court found that Carpenter "surrendered the residence in which the juvenile would be returned to a person who is a convicted child sex offender."[2] In *Newmy v. Arkansas Department of Human Services*, 2018 Ark. App. 562, 567 S.W.3d 857, we affirmed a best-interest-finding analysis when a mother was living with a registered sex offender. Therefore, we cannot say the circuit court clearly erred in its potential-harm analysis or best-interest finding herein.

Affirmed.

ABRAMSON and SWITZER, JJ., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.

---

[2]While these specific findings were made in the court's discussion of the subsequent-other-factors ground for termination, the court's potential-harm finding expressly addressed Carpenter's decision to permit a child sex offender to reside in her residence.